New York Penal Law 120-05-2 Assault Second with a Dangerous Instrument only requires an intent to cause physical injury and the causation of physical injury. It doesn't include or require the intent to cause serious physical injury or the causation of serious physical injury. This court in 2018, in the Villanueva case, and this is footnote 6, which is so important to this argument, held that there must be an intent to cause serious physical injury and the causation of serious physical injury for a similar assault statute to be a crime of violence under the Elements Clause of 16A. As a result, the statute at issue here lacks a necessary element or requirement to make it a crime of violence. Villanueva, in our view, is the law of the circuit. Now, the conflict here that the court has to grapple with is the court's Singh decision in September of 2019. So that's the most recent decision of our court. It were bound by it. And isn't that dispositive, Singh? It is the most recent decision of the court, and you're actually, it's absolutely the reverse. You're not bound by it. When two panels of the court, and this is the Tanasi case, two panels of the court reach differing conclusions, the court is bound by the first issued decision. It's just the converse or the flip side of the idea that a panel is bound by a prior panel. So the Singh decision, interpreting this statute, 125.052, came out the other way and said it's a crime of violence. The problem is it didn't grapple with, it cited Villanueva for a different proposition, but call it missed the boat, call it didn't recognize the import of the footnote, it contravened Villanueva. Here's what Singh said, if the court will let me quote him. But assuming without, excuse me, admittedly, 125.052 requires the causation of physical injury rather than serious physical injury. But assuming without deciding that this difference could be material, then it goes on to talk about why the deadly weapon or dangerous instrument prong would matter. Assuming without deciding, Villanueva decided it. Villanueva said there has to be serious physical injury for a simple assault statute to be a crime of violence. And so missed the boat, didn't recognize the import, whatever the case may be, Villanueva controls. It's the earlier issued panel decision. It's exactly on point. And this statute lacks what Villanueva said, Chirinovsky said, is required. An intent to cause serious physical injury and the causation of serious physical injury. Nothing in the Hetcheverria decision that the government cites from October changes that. One, it's a summary order. Two, the court didn't address the argument I'm making now. It was made to them, but the panel didn't address it. And so Judge Calabresi, Judge Pooler, my answer to you is as firm as can be, you're bound by Villanueva. And no one knows the Villanueva decision, Judge Pooler, except maybe Judge Newman better than you, because you dissented. And the point, I think, of Villanueva, I mean, footnote six is not an outlier in Villanueva. Villanueva comes after Castleman, and the Castleman decision... Was that a holding in that decision? Was that necessary to that decision? I think it was necessary to the decision because it was talking about, I mean, part of Chirinovsky's abrogated with regard to the indirect act part, but with regard to the force required, it was necessary to the decision. And ultimately the conclusion of Villanueva over Judge Pooler dissent is that it was a crime of violence for armed career. But if it was a crime of violence in any event, then saying that it would not be a crime of violence in that would be dicta. And if it was dicta, then Singh could do what he did. And I take it Singh must have treated it as dicta, and no one on our court did what we usually do when there is a direct conflict between an earlier and a later one, which is going back. So that I think your reading of the earlier case is very understandable, but if the case didn't turn on that, though it said that, and the very fact that Judge Pooler dissented suggests that situation, means I'm afraid that we're still stuck with Singh. I'd agree with the concept that if it's dicta, then Singh would control, I guess, my dispute or my... It's whether Villanueva was dicta or not. We'll have to go back and check. I'd call it my serious quibble with the premise is that because the government... It's not a quibble. The highest possible quibble or deep debate. But I think the point I wanted to make with regard to Villanueva is the footnote is not some kind of outlier. The government was arguing Chernovsky was abrogated across the table. Villanueva comes after Castleman. And of course, as the court knows, Castleman has two parts. One is the indirect force aspect and the other is the violence aspect. And Castleman said, Justice Sotomayor, over the strong dissent of justice or the concurrence of Justice Scalia, is that we're finding that this meets the requirement in the specialized domestic violence context, but we're refusing in two or three different places to equate the result, injury, with violent force. And even Stoeckling after that, after Castleman, after or around the... I think it's after Villanueva, rejects the concept that Curtis Johnson violent force is somehow not necessary going forward. So the situation we have is... And just back to what Singh did or didn't do, even if it was dicta, Your Honor, I would have thought that the panel would have addressed... Yeah, we would like it to, but of course, it doesn't need to. If it is dicta to the contrary, and then they hold, you know, we can criticize them, but we're still bound by the decision. In the government, what I hear from the government on why that footnote doesn't matter is, well, that there's a dangerous instrument aspect, but that was present in Villanueva too. That was a dangerous instrument. And then what the per curiam decision in Singh focused on was the risk of a dangerous instrument. And with all due respect to the Singh panel's decision, I think it's showing, Judge Poole, your dissent's worst fears are coming true. We have a 16A situation that is now being read as the new 16B. Risk is being infused for a statute that is very closely cabined to tie to the elements of the offense. And 16A is being opened in a way that's inconsistent with really what is the guiding star here, Curtis Johnson. There has to be violent, active force. The Supreme Court said that in Curtis Johnson. The Supreme Court said that in Leocal. The Supreme Court said that as recently as Stoeckling, which is a specialized robbery context. So the fundamental question the court has to determine is the one that you've put your finger on. But I think it's an important one, and I think we have the better of the argument. Thank you. Thank you. Counsel, you reserve two minutes for rebuttal. We'll hear from the government. Good morning. May it please the court. Rebecca Hoffberg-Phillips on behalf of the United States Attorney General. As this court has already recognized, it's not only rejected petitioner's argument once, but it's rejected it twice. In Singh and Echevarria, it's not only rejected petitioner's position, but it also declined to revisit it in any in-bank proceeding, which the Echevarria case sought in-bank, and a majority of this court denied to rehear that issue in-bank, despite all of these arguments being presented to it. You heard opposing counsel say that if we are confronted with two different lines of precedent that we can choose among them. We can choose Villanueva over Singh. Your Honor, you don't have two different lines of precedent. If I can explain why Villanueva is not in conflict with Singh. That's what we'd like to hear from you. Yes, Your Honor. First of all, I want to point out that Singh cites Villanueva. I understand it doesn't cite it to... It doesn't matter if it gets it wrong, just as it doesn't matter whether it cites it if it gets it wrong. The question is, did Singh decide a question that it was open to her to decide because the previous cases were dicta, or did it decide something in contradictory fashion to an earlier holding of this court? That's what you should address. Yes, Your Honor. First of all, it's absolutely dicta, as you mentioned. I'll say that to the extent that Villanueva said anything about serious versus non-serious physical injury, it was dicta because there was no reason... The Krasnovsky statute was a misdemeanor statute. It was misdemeanor assault, and there was no possible way that it was going to qualify as the crime of violence under any circumstance in that particular case. It was definitely not going to qualify. So anything about making the distinctions are irrelevant. The other part of Villanueva, and in terms of trying to make some distinction between serious and non-serious physical injury, actually misses the entire point because maybe by petitioner's arguments with respect to omission, maybe even serious injury could fall under omission, and I can get to that in a minute. The critical part is the use of a deadly weapon, and that's what's not addressed, and that's what he keeps skipping over. So he skips over this element of the statute. Before this court just now, he was citing and reading from Singh, and he skips over that critical part of Singh where the court is acknowledging implicitly what happened in Villanueva and the argument that may or may not have been actually expressly raised in terms of any conflict. The court's recognizing to the extent there could be any distinction between serious and non-serious physical injury, the critical part is that the dangerous weapon, the dangerous, deadly weapon or dangerous instrument, I'm sorry, those are the exact words of the statute, they import the serious bodily injury in that regard because the court said we can't imagine any scenario where you could basically, you know, have a deadly weapon or instrument involved and you could basically use a deadly weapon to omit an act that causes injury essentially is what his position would be asking the court to do to the extent that he's trying to bring in an omission component to it. What the court basically found in Singh is they were looking at whether this could be committed by an omission, which is really actually the much more important distinction rather than serious versus non-serious physical injury, because the fact is if you cause death, if you cause serious injury, or if you cause regular injury, if the court's position is that it's the omission part that matters, then serious versus non-serious physical injury doesn't matter. What matters is that a deadly weapon can't be done by an omission. You can't even concoct a fanciful hypothetical and that's what the court in Singh was looking for. It seemed to me that the court was interested in knowing about the omission aspect and what I would say to that is that there's plenty of by the government that actually even though there's some distinction between saying as a general matter you can commit a crime by an act and or omission, the way that act is defined in terms of basically to act includes both performing an act and omitting it to perform an act under 15.00 subsection four and five. Failing to act where there is a duty to act is an act or conduct itself. Talking to us a great deal about Singh and I'd like to bring you back to explain to me a little more clearly why Villanueva's statement on this point was dicta. Could you just go back to that because I'm not, you know, that Singh deals with this issue. I think no one is doubting. The question is was Singh correct in doing that? Right, whether Villanueva, anything in Villanueva exists after Singh. That's I think the point that counsel was making that we can still rely on Villanueva. Yes, you can rely on it for the force not being a disqualifying factor following Castleman. So what Villanueva was recognizing is that the part of Krasinovsky that no longer exists is the part regarding indirect force. And so the question now is whether omission is a type of indirect force. That's really what this now comes down to. And the government's point in this case is that this particular act, this particular statute cannot be committed by an omission. Even if it could, there's arguments that the omission would qualify as an act, and I can get to those if the court would like, but our first and foremost position is that it can't be committed by an omission. And that's what's really critical here. Now in terms of what exists in Villanueva is that indirect acts, such as poisoning someone, count as force following Castleman. And that's the extent to which Krasinovsky was expressly overruled. That has been followed by every court. And I have a dissent there. You were concerned about the realistic probability test, among other things, but you did note that Stoeckling was going to be on the way at that point. I'm not sure if Stoeckling lived up to whatever you were hoping to get out of it, but I will say that Banegas-Gomez in a Connecticut assault case that expressly follows Villanueva because it involved the exact same Connecticut statute in Banegas-Gomez. Banegas-Gomez was a post-Stoeckling decision, but does a CF to Stoeckling in that decision that recognizes that the causation of force is the causation of physical injury that can amount to pain or injury under Johnson and sort of brings together the Johnson, Castleman, and Stoeckling definitions of force. And all of those are harmonized in the court's precedent as it stands. There is no conflict whatsoever. The only thing that the court has not expressly ruled on, and I cited the Sierra case in my brief where basically an omission was seen as an indirect act, an indirect acts count. In that case, it was murder. And as I was saying, that's why the distinction between serious and non-serious injury and non-serious injury doesn't matter. It could be death. If the question is whether omission or omission doesn't count, that's what matters. It doesn't matter the level of injury. In this case, you can't have an omission. So any of those more complicated questions for causation of physical injury would be for another day. Because this case involves the intentional, you know, you have to use a deadly weapon. And the deadly weapon brings in the serious bodily injury to the extent that that does matter to the court. And that's what the Singh court was getting at. So it's harmonized with Villanueva because what the court read in was a serious bodily injury requirement based on the deadly weapon requirement of this statute. And that's what's really important to read about Singh. They didn't use the magic words of it's dicta or we understand. We're saying we find the serious bodily injury to the extent that Villanueva said we need serious bodily injury. It's here because of the deadly weapon usage. And that's the part that he keeps skipping over. And that's the part that makes this distinguishable from Krasinovsky and makes that case not matter and any distinction with it dicta. It did not involve a deadly weapon nor do any of the cases that he cites. They do not involve deadly weapons. Failure to withhold medical treatment food, not using a deadly weapon. None of them show that realistic probability test that it would be applied in the manner in which he seeks. And that is exactly why the realistic probability test does exist so that you can't, I can't even come up with a fanciful hypothetical like I said where you use a deadly weapon, you omit, you know, by an omission. I can't think of anything. I don't think he ever came up with anything either. I can't possibly think of anything. I do want to say that I see my time is running though. This issue has been squarely decided. The other issue in this case is whether the government established the identity of the petitioner in the conviction documents. And that challenge is also meritless. And that's because there is clear unequivocal evidence in the record, particularly in Exhibit 3, which the immigration judge specifically relied upon in his decision. And if you couple that with pages 193 and 194 of the record, you will see that he admits to being the appellant in the resentencing matter. And that that state court decision references two aliases for Allah and Al-Najina. And he admits that that was him taking the appeal from his prior conviction for second degree assault. That is the important evidence on that issue. I see that my time is up. And if the court does not have any further questions, the government will rest on its brief. Thank you, counsel. Mr. Hoover, you reserve two minutes for rebuttal. I've got more than fanciful hypotheticals, but I'll get to that in a minute. Four points. One, it's a dangerous instrument or deadly weapon. I heard dangerous instrument about three dozen times. The statute is dangerous instrument or deadly weapon. How does that help you? It's helpful because the idea that counsel was advocating to the court that it's a deadly weapon, which must necessarily involve, no matter what possible use, violent physical force, and the dangerous instrument prong, which is what he was actually convicted of, includes things like plastic knuckles and things along those lines. There's also the omission argument that ties into that. Second, the hecheveria, denial of rehearing en banc doesn't have any precedential value. There was nothing decided there. Third, I want to amend my answer on the dicta point. Say it is dicta in Villanueva. I still win because you go back to Chernovsky. Villanueva says this about Chernovsky. This is the text. Chernovsky explains an understanding of the use of force that has been abrogated by the Supreme Court's decision in Castleman, footnote six. You go to footnote six, and that's the indirect use, the poisoning concept, et cetera, where there's not a direct physical touching. Footnote six then says there's two reasons why Chernovsky's still good. Yes, it was a misdemeanor, but also the intent and force that was used was physical causing physical, not intent to cause serious physical causing serious physical. So Villanueva's dicta on that point, you revert to Chernovsky, and the government even said from the podium here that Chernovsky was abrogated with regard to indirect force. Nothing in that holding in Chernovsky has been touched whatsoever. With regard to the omission prong, the government is very sensitive to this because the reality is under the penal law in this statute, it can absolutely be committed by omission. The cases that put this or tee this up for the court are the Court of Appeals decision in Wong, 81 New York 2nd, 600. A caretaker with a duty to act with the requisite intent sees another person or a spouse or a partner committing violence to a child in their care as a duty to act and can be criminally liable. And with regard to how that could occur by omission, the principal actor is doing something illegal using a dangerous instrument or a deadly weapon, or for example, the wire handle of a fly swatter like in People v. Wade, 232 AD 2nd, 290. So the federalism concept here is turned on its head. The government says, let us interpret and write out of the statute omissions, when the reality is 120.052 can be conducted or occur via omission conduct. So the bottom line is for this court, Villanueva or Chernovsky controls. The Singh decision, which failed to deal with footnote 6 or the holding of Chernovsky, can't be followed and in fact is null on that point, and 120.052 is not a crime of violence. It's also not a crime of violence, and this is the second point of Singh, because it can occur or be conducted by omission. And the final point, and I addressed this in my principal argument with regard to Singh, is there's this idea that, hey, the dangerous instrument prong makes it necessarily a crime of violence. If you read the definition in the penal law of dangerous instrument, it's one created, it can be tennis shoes, it can be a swimming pool, it could be this water bottle, my pen, that when used in a particular way creates the risk of harm. And that's right back to 16b in the residual clause. Thank you. Thank you, Your Honor. Thank you both. Very interesting case.